UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDRE THOMAS,

    Plaintiff,

v.

    Case No. 23-cv-10107
    Honorable Linda V. Parker

ACCENT CONTROLS, INC.,

    Defendant.
_____/

# OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS (ECF NO. 8); (2) DENYING AS MOOT PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT (ECF NO. 13); AND (3) DIRECTING DEFENDANT TO FILE ANSWER TO COMPLAINT

On January 12, 2023, Plaintiff D'Andre Thomas filed this lawsuit against his former employer, Defendant Accent Controls, Inc., alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Asserting that Thomas failed to exhaust his administrative remedies prior to filing this action, Accent Controls moved to dismiss his Title VII claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8.) Thomas subsequently moved to file an amended complaint to plead facts establishing that the claims had been administratively exhausted (ECF No. 13). Both motions are fully briefed. (ECF Nos. 10, 12, 14, 15.)

For the reasons discussed below, the Court finds that Thomas timely exhausted his administrative remedies. The Court therefore is denying Accent Controls' motion to dismiss, finds it unnecessary for Thomas to amend his initial Complaint to cure any asserted defect with respect to exhaustion, and is directing Accent Controls to file an Answer to Thomas' pleading.[1]

## Factual and Procedural Background

### Thomas' Employment

Thomas, who is African American, began working for Accent Controls at its Detroit Arsenal location in January 2020. (ECF No. 1 at PageID 4, ¶ 11.) Beginning in early November 2020, Thomas had several encounters with a project manager, Shawn Miller, which Thomas believed were racially discriminatory. (*See id.* at PageID 4-5, ¶¶ 15-18.) Thomas sought clarification from Miller regarding some of his comments, copying a supervisor when doing so. (*Id.*)

On March 1, 2021, Thomas had another encounter with Miller concerning the availability of COVID-19 vaccinations for union members, at which time Miller "berated" Thomas. (*Id.* at PageID 5-6, ¶ 19.) Shortly thereafter, on April 6, Thomas was vaccinated. (*Id.* at PageID 6, ¶ 20.)

---

[1] The Court does not find Accent Controls' motion to be frivolous. Therefore, it is rejecting Thomas' request to impose sanctions for the filing.

Accent Controls subsequently instituted a mandatory vaccination requirement and required visitors, contractors, and employees entering its premises to complete a vaccination status form. (*See id.* at PageID 6, ¶¶ 21-24.) On December 6, 2021, Thomas was "falsely informed by his supervisor" that the deadline to submit the form had been moved to 11:00 a.m. that day. (*Id.* at PageID 7, ¶ 25.) When Thomas asked Miller about the deadline, Miller stated the form was due by 12:00 p.m. (*Id.*)

Thomas submitted the form shortly after the deadline and was issued a verbal warning as a result. (*Id.* ¶¶ 26, 27.) He refused to sign the discipline. (*Id.* ¶ 27.) Thomas was then informed that his form contained an error, in that he failed to check a particular box. (*Id.* ¶ 28.) Thomas was instructed to redo the form. (*Id.* ¶ 28.) He did so, but declined to respond regarding his vaccination status. (*Id.* ¶ 29.)

Accent Controls therefore deemed Thomas "unvaccinated" and, on December 8, notified him that he would need to submit a negative COVID-19 test result or proof of vaccination before returning to work. (*Id.* at PageID 7-8, ¶ 30.) Accent Controls did not provide Thomas with information concerning where he could obtain COVID-19 testing. (*Id.* at PageID 8, ¶ 31.) However, there was a testing facility at the Detroit Arsenal, and posted signs addressed to personnel indicated that free COVID-19 screenings were offered there. (*Id.* ¶¶ 32-33; ECF

No. 1-4.) Thomas was aware of Caucasian co-workers using the on-site facility without repercussions. (*Id.* ¶ 36.) He confirmed with a Caucasian co-worker that testing at the facility was free and available to workers; and, when the Director of Human Resources contacted Thomas on December 9 asking why he had not submitted proof of vaccination, she also indicated that onsite testing was available to him. (ECF No. 1 at PageID 8, *Id.* ¶¶ 34-35.)

On December 9, Thomas was placed on leave without pay for the time he was seeking testing, even though he had available leave time. (*Id.* at PageID 9, ¶ 37.) On December 10, he received a verbal warning for being a "no call no show" on December 9. (*Id.* ¶ 38.) He obtained COVID-19 testing at the on-site facility on December 13 and 15. (*Id.* ¶ 39.)

Miller reported Thomas for using the on-site testing facility and Thomas received a three-day suspension as a result. (*Id.* ¶¶ 41-42.) At a meeting concerning the discipline, Miller was extremely hostile and raised his voice to berate Thomas. (*Id.* ¶ 42.) Following the meeting, the signs indicating that employees could utilize the onsite testing facility were no longer there. (*Id.* at PageID 10, ¶ 44.)

On December 17, Thomas complained to human resources that Miller was harassing him. (*Id.* ¶ 45.) Accent Controls terminated Thomas that same day for using the onsite testing facility. (*Id.* ¶ 46.)

## EEOC Charges

On July 21, 2022, Thomas filed a charge of racial discrimination and retaliation against Accent Controls with the Kansas City Area Office of the Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge No. 471-2022-01703 ("Kansas Charge"). (ECF No. 11 at PageID 92-93.) Accent Controls is headquartered in Kansas City. (*See* ECF No. 10-5 at PageID 91.) In the Kansas Charge, Thomas alleged discrimination between November 9, 2020 through December 17, 2021, and retaliation based on his termination on the latter date. (ECF No. 11 at PageID 92.)

Thomas also filed a charge against Accent Controls with the Michigan Department of Civil Rights ("MDCR"), which was dual filed with the EEOC and assigned EEOC No. R23A-2022-00355 ("Michigan Charge"). (ECF No. 8-1 at PageID 48-49.) The Michigan Charge focused on the events related to Accent Controls' COVID-19 protocols. (*Id.*) Although difficult to read, it appears that Thomas signed the Michigan Charge on March or May 14, 2022. (*Id.* at PageID 49.) Accent Controls maintains that the Michigan Charge was filed July 26, 2022 (*see* ECF No. 14 at PageID 136, 137), which appears plausible considering the dates of the other documents attached to the charge (*see* ECF No. 8-1).

The EEOC Kansas City Area Office issued Thomas a right-to-sue letter on November 25, 2022, referencing the Kansas Charge. (ECF No. 1-1 at PageID 19.)

On September 5, 2023, the EEOC's Detroit Field Office issued Thomas a right-to-sue letter, referencing the Michigan Charge. (ECF No. 13-1 at PageID 110.)

**This Lawsuit**

As indicated, Thomas initiated this lawsuit against Accent Controls on January 12, 2023. The Complaint contains several statements concerning Thomas' exhaustion of his administrative remedies. In the "Jurisdiction and Venue" section, it is alleged that Thomas "filed a charge with the Michigan Department of Civil Rights alleging racial discrimination and retaliation against [Accent Controls]" and "was issued the right to sue . . . on November 25, 2022. ***Exhibit A[.]***" (ECF No. 1 at PageID 3, ¶ 8 (emphasis in original).) Exhibit A is the November 25 right-to-sue letter issued by the EEOC Kansas City Office on the Kansas Charge. (ECF No. 1-1.) Later, in the Complaint's "General Allegations" section, Thomas pleads that, on July 21, 2022, he submitted a charge of racial discrimination and retaliation with the EEOC. (*Id.* at PageID 11, ¶ 50.) Thomas again refers to the November 25 right-to-sue letter "[t]he EEOC issued . . . under these claims." (*Id*.)

Accent Controls filed its pending motion to dismiss on March 13, 2023. Thomas filed his motion to file an amended complaint on September 12, 2023.

**<u>Applicable Standards</u>**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is "freely" granted "when justice so requires." *See* Fed. R. Civ. P. 15(a). The United States Supreme Court has advised that a plaintiff should be allowed the opportunity to test a claim on the merits if the facts and circumstances underlying the claim suggest that it may be a proper subject of relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court further instructed that a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *Id*.

## Applicable Law & Analysis

### Title VII's Administrative Exhaustion Requirement

A claimant must exhaust his or her administrative remedies before filing an employment discrimination complaint under Title VII in federal or state court. *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002)). The claimant exhausts administrative remedies "(1) by filing timely charges of employment

discrimination with the EEOC, and (2) receiving and timely acting upon the EEOC's statutory notice of the right to sue." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) (citing 42 U.S.C. § 2000e-5(f)(1); *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973)).

For a charge to be timely filed under Title VII, the claimant generally must file it with the EEOC within 180 days of the last alleged discriminatory act. 42 U.S.C. § 2000e-5(e); *see also Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 827 (6th Cir. 2019) (citing *EEOC v. Com. Office Prods. Co.*, 486 U.S. 107, 110 (1988)). However, this period increases to 300 days in "deferral jurisdictions"— i.e., jurisdictions where a State or local agency, known as a Fair Employment Practice Agency ("FEPA"), "enforces a law that prohibits discrimination on the same basis." *Jones v. Fed. Express Corp.*, 952 F.3d 815, 917 (6th Cir. 2020); *see also Logan*, 939 F.3d at 828. In a deferral jurisdiction, a charge is generally considered "timely" if, within 300 days, the "person aggrieved has initially instituted proceedings with the state or local agency." 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13.

The availability of the 300-day filing window is determined by the State in which the alleged discriminatory employment practice *occurred*. *See Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 395, 407 (6th Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)). Therefore, if the alleged unlawful conduct

occurred in a deferral state, the employee must file his or her charge of discrimination within 300 days of the alleged discriminatory act. *Id*. (citing 42 U.S.C. § 2000e-5(e); *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, 837 n.5 (6th Cir. 1988)).

"The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Kilpatrick v. HCA Hum. Res., LLC*, 838 F. App'x 142, 146 (6th Cir. 2020) (quoting *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b))). Because claimants typically file administrative charges without the assistance of counsel, the Sixth Circuit has advised that they "should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Id.* (quoting *Randolph*, 453 F.3d at 732) (additional quotation marks and citation omitted). The court explained that Title VII's exhaustion "requirement . . . is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)). This is because the exhaustion "requirement exists so that the EEOC will have an opportunity to convince the parties to enter into voluntary settlement,

9

which is the preferred means of disposing of such claims." *Id.* at 731-32 (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)); *see also Logan*, 939 F.3d at 827 (the exhaustion requirement "afford[s] non-compliant employers the chance to voluntarily cure their violations before Title VII litigation may be brought against them").

If the opportunity afforded to the EEOC does not produce a settlement, the EEOC does not elect to bring a civil action, or 180 days has elapsed since the charge was filed, the EEOC typically issues a right-to-sue letter to the claimant. 42 U.S.C. § 2000e-5(f)(1); 29 CFR § 1601.28. Once the EEOC issues a right-to-sue letter, the claimant has 90 days to file a complaint in state or federal court. *Id.*

### Application to Thomas' Charges

The allegations in Thomas' EEOC charges and the present Complaint arise from conduct in Michigan. (*See generally* ECF No. 1.) Michigan is a deferral state. *See Logan*, 939 F.3d at 828. So is Kansas. *See Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1183, 1186 (10th Cir. 2006); *Proctor v. UPS*, 502 F.3d 1200, 1206 & n. 3 (citing Kan. Stat. Ann. §§ 44-1003, -1004; *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003)).

Accent Controls nevertheless maintains that Thomas is not entitled to the 300-day filing window because the Kansas Charge was not submitted to the appropriate state agency but rather the EEOC's Kansas City Area Office. As the

Sixth Circuit stated in *Logan*, "[t]o benefit from the extended limitation period, the complaining employee must actually 'institute proceedings' with the appropriate state agency." 939 F.3d at 827 (quoting 42 U.S.C. § 2000e-5(e)(1)). However, as the Sixth Circuit further explained in *Logan*, when the EEOC has a work-sharing agreement with the State and local agencies, "employees in deferral jurisdictions . . . gain the benefit of the full 300-day limitation period[,]" even if the charge of discrimination is first filed with the EEOC. *See id.* at 828 (citing 29 C.F.R. § 1601.13(c)).

Under such work-sharing agreements, "if an employee in a deferral state initially files a charge with the EEOC, the EEOC may share the charge with the state agency." *Id.* The state agency has exclusive jurisdiction over the charge for a 60-day deferral period. *Id.* § 2000e-5(c). However, FEPAs often waive this 60-day deferral period under their work-sharing agreements with the EEOC. *Logan*, 939 F.3d at 828 (citing *Com. Prods. Co.*, 486 U.S. at 121). Further, the terms of the work-sharing agreements between FEPAs and the EEOC can be self-executing. *Jones*, 952 F.3d at 819. Under such self-executing agreements, the submission of a charge to the EEOC "cause[s] three things to automatically and simultaneously occur: (1) the EEOC, acting as [the FEPA]'s agent, institute[s] a [FEPA] proceeding; (2) the [FEPA] terminate[s] that proceeding pursuant to its waiver; and (3) the EEOC institute[s] its own proceeding." *Id.*

The EEOC has entered into a work-sharing agreement with the MDCR.[2] *Logan*, 939 F.3d at 828. In that instance, "the employee will have preserved h[is] claim if within 300 days of the allegedly discriminatory acts []he either (a) institutes proceedings with the state agency and also then files the charge with the EEOC, *or* (b) *files only with the EEOC*, which under the work-sharing agreement, refers the charge to the *applicable* state agency." *Id.* at 828 (emphasis added).

Thomas filed the Kansas Charge within 300 days of his termination. Therefore, the charge, which included the claims of discrimination and retaliation alleged in his Complaint, was timely. Thomas also timely filed this lawsuit after the EEOC issued the right-to-sue letter in connection with the Kansas Charge.

Even setting aside the Kansas Charge, however, the Court believes Thomas exhausted his administrative remedies through the Michigan Charge. That charge

---

[2] It is unclear whether a work-sharing agreement was in place between Kansas and the EEOC when Thomas filed the Kansas Charge, although such agreements were in place previously. *See, e.g.,* http://www.khrc.net/pdf/WorksharingAgreement.pdf (work-sharing agreement for fiscal year 2019). Nevertheless, as previously discussed, the availability of the 300-day filing window is determined by the State in which the alleged discriminatory employment practice occurred. *Alexander*, 177 F.3d at 407 (citing 42 U.S.C. § 2000e-5(e)). It, therefore, seems that the relevant question is whether the EEOC and MDCR have such an agreement. *See Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995) (holding in a case under the Age Discrimination in Employment Act—which contains exhaustion requirements comparable to Title VII in significant respects—that the 300-day extended filing period is available when the alleged discriminatory acts occur in a deferral state, even where the associated EEOC charges are filed in a non-deferral State).

was filed within 300 days of the latest date of alleged discriminatory action. It identified Accent Controls and "describe[d] generally the action or practices complained of." *Kilpatrick*, 838 F. App'x at 146 (quoting *Younis*, 610 F.3d at 361 (quoting 29 C.F.R. § 1601.12(b))). While Thomas did not expressly allege retaliation in the Michigan Charge, he did so in the Kansas Charge. As such, Accent Controls was given notice concerning the conduct at issue, the EEOC was afforded the opportunity to investigate Thomas' claims of discrimination *and* retaliation, and the EEOC and Accent Controls were provided notice and an opportunity to settle *both* claims. *Younis*, 610 F.3d at 361 (explaining that the exhaustion requirement "serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion"); *Randolph*, 453 F.3d at 731-32 (exhaustion requirement exists to give the EEOC the "opportunity to convince the parties to enter into voluntary settlement" and "is not meant to be overly rigid"). The Sixth Circuit found an employee's retaliation claim exhausted under similar circumstances in *Kilpatrick*. 838 F. App'x at 146 (concluding that the plaintiff exhausted his administrative remedies with respect to his retaliation claim, although he did not allege retaliation in his first EEOC charge but did in a second charge).

13

Thomas did file his Complaint here before receiving the right-to-sue letter related to the Michigan Charge. Nevertheless, the receipt of the letter, while a condition precedent to filing a Title VII action, is not jurisdictional. *Mallory v. Noble Corr. Inst.*, 45 F. App'x 463, 468 (6th Cir. 2002) (citing *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031-32 (6th Cir. 1998)). Courts therefore have held that a plaintiff's receipt of a right-to-sue letter after filing a federal court action cures the defect in filing before the letter's receipt. *See Portis v. Ohio*, 141 F.3d 632, 634 (6th Cir. 1998) (concluding that the plaintiff's receipt of the right-to-sue letter a week after the complaint was filed did not bar his claim where the "brief absence [of the letter] caused [the defendant] no prejudice"); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309-10 (6th Cir. 2000) (refusing to "deny [the p]laintiff his day in court" because he received the right-to-sue letter after filing the lawsuit but prior to the court's summary judgment ruling); *Chandler v. Vulcan Materials Co.*, 81 F. App'x 538, 541 (6th Cir. 2003) (reversing district court's decision denying the plaintiff's motion for reconsideration of the grant of summary judgment due to the absence of EEOC right-to-sue letters in the record, where the plaintiff submitted the letter in support of the reconsideration motion and the defendant articulated no prejudice resulting from the plaintiff's delay in producing the letter).

## **Conclusion**

In summary, the Court concludes that Thomas exhausted his administrative remedies. The Court, therefore, finds no reason for Thomas to amend his complaint to plead facts demonstrating his exhaustion of those remedies. The proposed amendment will only further delay these proceedings unnecessarily.

Accordingly,

**IT IS ORDERED** that Accent Controls' motion to dismiss Thomas' Title VII claims (ECF No. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that Thomas' motion to amend (ECF No. 13) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Accent Controls shall file an Answer to the Complaint within fourteen (14) days of this Opinion and Order.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 30, 2023